BART F. VIRDEN, Judge
Appellant Jacqueline Jennings appeals from the Crawford County Circuit Court's revocation of her suspended sentence and the imposition of a seven-year term of imprisonment in the Arkansas Department of Correction followed by a seven-year suspended imposition of sentence (SIS). Jennings argues that the trial court erred in revoking her suspended sentence because there was insufficient evidence that she committed a criminal offense. We affirm.
I. Procedural History
In December 2017, Jennings pleaded guilty to possession of a firearm by a felon, and she received a ten-year SIS. She was ordered to pay a fine, costs, and fees, and she was advised that the SIS was conditioned on her good behavior. In August 2018, the State filed a petition to revoke alleging that Jennings had committed new criminal offenses on July 29, 2018. Specifically, she was charged as a habitual offender with arson, third-degree domestic battery, and resisting arrest. The State also alleged in its petition that she had failed to make any payments on her fine, costs, and fees, leaving an unpaid balance of $ 1,350. A hearing was held October 24, 2018.
II. Revocation Hearing
The testimony revealed the following sequence of events. On July 29, 2018, Jennings *519 and her husband, Charles Jones, got into a fight at the home of Jones's sister, Patricia Collett. Jennings and Jones were described as "nose-to-nose" in the doorway of Collett's trailer when Jennings attempted to strike Jones with a broomstick; however, Collett blocked the blow. Collett was struck on her hand, and Jennings stepped on Collett's foot with her cowboy boots, breaking Collett's big toe. Jones restrained Jennings by "choking her out." He then took Jennings into the trailer and went back outside with Collett, who was calling the police. Meanwhile, Jennings had come around and was inside the trailer cursing and throwing things.
By the time James Polk, a corporal with the Crawford County Sheriff's Department, arrived at the scene in response to a domestic disturbance, Jennings had locked herself inside the trailer and refused to come outside, even after Polk had identified himself. Collett and Jones explained to Polk that Jennings had been off her medication for some time and had been talking to herself. Jennings refused Polk's offer to have EMS take her to a hospital. More officers arrived on the scene, and Jennings suddenly emerged from the trailer yelling that it was on fire.
Two officers had to restrain Jennings to keep her from reentering the trailer, which had smoke billowing out of it. Jennings tried to pull away from the officers. Polk testified that the officers kept telling Jennings to stop resisting but that they were forced to take her to the ground to handcuff her. Polk conceded that "[t]here were no physical blows thrown towards us[.]" Polk stated that, after they had gotten Jennings in custody, she said that "she'd see [him] in Hell and make sure [he] got there." He also said that, while he was patting her down for weapons, she had threatened to "beat [his] ass." Polk said that the trailer eventually "burnt to the ground" and was a total loss.
Both Collett and Jones testified at the revocation hearing that they thought Jennings's actions on that day were unintentional and accidental. Jones said of Jennings, "She's nice and kind, you know the sweetest person you'd ever want to meet as long as she's taking her medication." Polk testified that neither witness had described Jennings's actions as "unintentional" or "accidental" on the day of the altercation.
The trial court revoked Jennings's suspended sentence upon finding that she had violated the terms and conditions of her SIS by setting the fire that burned Collett's trailer and by resisting arrest. The trial court did not find that Jennings committed domestic battery and stated from the bench, "I can't tell you what happened in the fight." The trial court did not address Jennings's alleged failure to pay her fine, costs, and fees because the State had not put on any evidence in that regard.
III. Standard of Review
In a revocation hearing, the State must prove its case by a preponderance of the evidence. Ingram v. State , 2009 Ark. App. 729, 363 S.W.3d 6. A trial court may revoke a defendant's suspended sentence if it finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his or her suspended sentence. Id. The State bears the burden of proof but need only prove that the defendant committed one violation of the conditions. Id. When appealing a revocation, the appellant has the burden of showing that the trial court's findings are clearly against a preponderance of the evidence. Id. Evidence that is insufficient for a criminal conviction may be sufficient for the revocation of probation or a suspended sentence. Id. Since the *520 determination of a preponderance of the evidence turns on questions of credibility and the weight to be given testimony, we defer to the trial court's superior position. Id.
III Discussion
A person commits the offense of resisting arrest if he or she knowingly resists a person known by him or her to be a law enforcement officer effecting an arrest. Ark. Code Ann. § 5-54-103(a)(1) (Repl. 2016). "Resists" means using, or threatening to use, physical force or any other means that creates a substantial risk of physical injury to any person. Ark. Code Ann. § 5-54-103(a)(2).
Jennings argues that there was no testimony that the force she had used created a substantial risk of physical injury to anyone because Polk testified that she had not thrown any "active blows" at the officers. Jennings also points to Polk's testimony that she appeared to be trying to escape the officers' grasp in an attempt to reenter the trailer-in other words, she was not trying to run away from the officers.
Polk responded to a report of "a physical dispute between family members." Before Jennings began resisting arrest by the officers (1) Jennings had broken Collett's toe by stomping on her foot with cowboy boots; (2) Collett had visible marks on her hand from where she had been struck by Jennings; and (3) Jones reported that Jennings had hit him in the face and neck area and had pulled his hair out when he had gotten between Jennings and Collett. In describing Jennings's resistance to the officers' efforts to arrest her, Polk said that Jennings was "wiggling around," "pulling against" him, "not cooperating," and "trying to get up, trying to get out of our grasp." He also said that Jennings did not "submit peacefully." Polk testified that Jennings had resisted to the extent that he and another officer had to take her to the ground to get handcuffs on her. In any event, according to the statute, using physical force is only one way a person may resist-a person may also threaten to use physical force. Here, Jennings threatened to use physical force against Polk when she said that she was going to "beat [his] ass" and that she would "make sure [he] got [to Hell]." This was evidence from which the trial court could conclude that Jennings's use, or threatened use, of physical force created a substantial risk of physical injuries to those present.
Because proof of only one violation of the terms and conditions of Jennings's SIS was necessary to revoke her suspended sentence, we need not address the other violation involving arson. We hold that the trial court's revocation of Jennings's SIS for committing the offense of resisting arrest was not clearly against a preponderance of the evidence.
Affirmed.
Gladwin and Whiteaker, JJ., agree.